# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) Mike Hartman, (2) Noah Guerrero and  
(3) Lance Heger, individually and on behalf  
of all others similarly situated,  

        CA No.: CIV-20-503-SLP

        Plaintiffs,  
v.  

        Collective Action  
(1) Harold Hoehner, Jr.,          Jury Demanded  
(2) Hoehner's Technical Services, Inc., and  
(3) Cactus Drilling Company, LLC,  

        Defendants.

## PLAINTIFFS' ORIGINAL COLLECTIVE ACTION COMPLAINT

Mike Hartman ("Hartman"), Noah Guerrero ("Guerrero") and Lance Heger ("Heger"), each a "Plaintiff" and collectively "Plaintiffs", individually and on behalf of all other non-exempt "Electricians" currently and formerly employed by Harold Hoehner, Jr. ("Hoehner"), Hoehner's Technical Services, Inc. ("HTS"), and Cactus Drilling Company, LLC ("Cactus Drilling") (Hoehner, HTS and Cactus Drilling are each a "Defendant" and collectively "Defendants") each of whom are similarly situated, bring this Fair Labor Standards Act ("FLSA") and this New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-19, *et seq*. suit against Defendants and state as follows:

1. **Nature of Suit.**

    1.1. The Department of Labor states that the misclassification of employees as independent contractors presents one of the most serious problems facing affected workers, employers and the entire economy. Misclassified employees often are denied access to critical benefits and protections to which they are entitled, such as the minimum wage, overtime compensation, family and medical leave, unemployment insurance, and safe workplaces.

Employee misclassification generates substantial losses to the federal government and state governments in the form of lower tax revenues, as well as to state unemployment insurance and workers' compensation funds. It hurts taxpayers and undermines the economy.

1.2. The FLSA was passed by Congress in 1938 as remedial legislation intended to benefit and protect workers. *See Barrentine v. Ark.-Best Freight Sys., Inc.,* 450 U.S. 728,739 (1981); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). One of the primary purposes of the FLSA is to protect workers from "substandard wages and oppressive working hours." *Barrentine*, 450 U.S. at 739; *see* 29 U.S.C. § 202(a), (b) (stating Congress' intent to eliminate substandard labor conditions). "[T]he FLSA was designed to give specific minimum protections to *individual* workers and to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from the evil of 'overwork' as well as 'underpay.'" *Barrentine*, 450 U.S. at 739 (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942) (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt))). To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not less than one and one-half times the regular rate at which he is employed." *Walling v. Helmerich & Payne*, 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207 (a)).

1.3. Defendants failed to pay Plaintiffs and the Class Members in accordance with the FLSA or the NMMWA. Specifically, Plaintiffs and the Class Members were paid as independent contractors instead of as employees. As a result, Defendants failed to pay Plaintiffs and

the Class Members at time and one half their regular rate of pay for hours worked in a workweek in excess of forty hours.

2. **Parties.**

   2.1. Hartman is an individual residing in this District who was employed by Defendant within the meaning of the FLSA within the three-year period preceding the filing of this Complaint. Hartman's consent to be a party plaintiff is being filed as an Exhibit to this Complaint.

   2.2. Guerrero is an individual residing in this District who was employed by Defendant within the meaning of the FLSA within the three-year period preceding the filing of this Complaint. Guerrero's consent to be a party plaintiff is being filed as an Exhibit to this Complaint.

   2.3. Heger is an individual residing in this District who was employed by Defendant within the meaning of the FLSA within the three-year period preceding the filing of this Complaint. Heger's consent to be a party plaintiff is being filed as an Exhibit to this Complaint.

   2.4. Hoehner is an individual residing in Oklahoma. He can be served at 3028 SW 92nd, Oklahoma City, OK 73159.

   2.5. HTS is a corporation existing under the laws of Oklahoma. HTS has an office in this District. The registered agent is Harold Hoehner, Jr., 3028 SW 92nd, Oklahoma City, OK 73159.

   2.6. Cactus Drilling is a limited liability company existing under the laws of Oklahoma. Cactus Drilling has an office in this District. The registered agent is Frederic Dorwart, 124 E. 4th St., Tulsa, OK 74103.

2.7. Defendants have Electricians working in this district and in the oil fields in New Mexico, Texas and Louisiana.

2.8. The "Class Members" are Defendants' current and former employees who, within the actionable time period, were employed as electricians at any location in the United States but who were paid as independent contractors. The Class Members were known as "Electricians" and "Helpers" (collectively, "Electricians") but this collective action is intended to cover all employees who performed electrical services and who were paid as independent contractors, regardless of actual job title. The Electricians were and are paid a straight-time hourly rate and not compensated at the statutory rate of one and one-half times their regular rate of pay for all hours worked more than forty (40) in a workweek.

3. **Jurisdiction and Venue.**

    3.1. Venue of this action is proper in this district because the events giving rise to the cause of action alleged herein occurred in this judicial district and Defendants maintain one or more regional offices in this District and Division. Venue exists in the judicial district pursuant to 28 U.S.C. § 1391.

    3.2. Defendants carry on substantial business in the Western District of Oklahoma, have offices in this District and have sufficient minimum contacts with this state to be subject to this Court's jurisdiction.

    3.3. Further, the acts and omissions that form the basis of the lawsuit (i.e., Defendants' failure to pay overtime compensation) occurred within this District.

    3.4. This Court has jurisdiction over this case pursuant to the district court's federal question jurisdiction as set forth in 28 U.S.C. § 1331. Specifically, this case is brought pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*, as amended.

3.5. Plaintiffs request that this Court exercise its supplemental jurisdiction over the New Mexico state law claims. 28 U.S.C. § 1367.

4. **Coverage.**

   4.1. At all material times, Defendants have acted, directly or indirectly, in the interest of an employer with respect to Plaintiffs.

5. At all material times, Defendants have acted, directly or indirectly, in the interest of an employer with respect to the Class Members.

   5.1. At all material times, Defendants have been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

   5.2. At all material times, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

   5.3. At all material times, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).  The Electricians worked on equipment that had traveled in interstate commerce. Electrical equipment and electrical supplies used by the Electricians were manufactured out of state and shipped in state for consumption and use. The drilling rigs and facilities on which the Electricians worked are assembled with equipment from out of state and produce oil and gas that flows in

interstate commerce. The Electricians used the instrumentalities of interstate commerce in the performance of their duties.

5.4. Two or more of Defendants' employees, engage in commerce by using equipment that has traveled in interstate commerce. By way of example and not by limitation, Defendants' employees used/use:

    5.4.1. Oil field equipment that has been manufactured and shipped across state lines;

    5.4.2. computers and telecommunications equipment that has been manufactured and shipped across state lines;

    5.4.3. office equipment, such as copiers, that has been manufactured and shipped across state lines;

    5.4.4. the interstate telephone systems, landline and cellular, to recruit and employ individuals for operational positions;

    5.4.5. The United States postal system to send mail across state lines; and

    5.4.6. the interstate banking systems to pay Defendants' employees.

5.5. Hoehner had authority to set corporate policy, participate in decisions regarding the payment of employees as well as participate in decisions regarding whether or not to pay Plaintiffs overtime. In addition, Hoehner had operational control of significant aspects of HTS' day-to-day functions and independently exercised control over the work situation. Hoehner had direct involvement in the day-to-day operation of PHTS and had direct responsibility for the supervision of the employees. Hoehner set work schedules and made work assignments.

5.6. Hoehner acted, directly or indirectly, in the interests of an employer in relation to Plaintiffs.

5.7. At all times hereinafter mentioned, Plaintiffs were employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206 - 07.

6. **Factual Allegations**

    6.1. HTS is a staffing company that provides labor to the oil and natural gas industry.

    6.2. Hoehner is the owner of and person responsible for all operations of HTS.

    6.3. Cactus Drilling is the largest privately-held domestic land drilling contractor in the United States.

    6.4. Hoehner, HTS and Cactus Drilling were joint employers of Plaintiffs and the Class Members.

    6.5. Hoehner: (1) possessed the power to hire and fire Plaintiffs and did so; (2) supervised and controlled employee the work schedule or conditions of employment of Plaintiffs; (3) determined the rate and method of payment for Plaintiffs; and (4) maintained employment records with regard to Plaintiffs.

    6.6. HTS: (1) possessed the power to hire and fire Plaintiffs and did so; (2) supervised and controlled employee the work schedule or conditions of employment of Plaintiffs; (3) determined the rate and method of payment for Plaintiffs; and (4) maintained employment records with regard to Plaintiffs.

    6.7. Cactus Drilling also: (1) possessed the power to hire and fire Plaintiffs; (2) supervised and controlled employee the work schedule or conditions of employment of Plaintiffs; (3) determined the rate and method of payment for Plaintiffs; and (4) maintained employment records with regard to Plaintiffs.

6.8. Plaintiffs worked for Hoehner, HTS and Cactus Drilling as Electricians within the three years preceding this lawsuit.

6.9. As Electricians Plaintiffs' job responsibilities included, among others, performing electrical work as directed by Defendants at one of the Defendants' work locations or one of the locations of one of Defendants' clients. The Electricians performed work on oil and gas rigs.

6.10.  Plaintiffs and the Class Members were blue-collar workers.

6.11.  Plaintiff's and the Class Members job duties were those of a nonexempt employee under the FLSA.

6.12.  The Class Members were/are Electricians who also performed electrical-related duties.

6.13.  For the work Plaintiffs and the Class Members performed as Electricians, Plaintiffs and the Class Members were/are paid as independent contractors.

6.14.  Plaintiffs and the Class Members were/are paid a straight time hourly rate.

6.15.  Defendants misclassified Plaintiffs and the Class Members, treating them as independent contractors rather than employees. In reality, the alleged independent contractors were/are actually employees of s who performed non-exempt work that is part of the fundamental service provided by Defendant.

6.16.  Plaintiffs and the Class Members worked long hours. On many occasions, Plaintiffs and the Class Members worked more than 12 hours a day and more than five days a week. Specifically, Plaintiffs worked more than 40 hours in practically all of the work weeks covered by this lawsuit.

6.17. Defendants' records will show the number of hour worked by Plaintiffs as the Plaintiffs were paid hourly.

6.18. Defendants were aware that Plaintiffs and the Class Members worked 40+ hours per week yet did not pay Plaintiffs and the Class Members overtime. Defendants were aware that Plaintiffs and the Class Members were working more than 40 hours a week because Plaintiffs and the Class Members were paid weekly on an hourly basis. Thus, Defendants tracked the time worked by Plaintiffs and the Class Members.

6.19. Defendants have employed and continue to employee numerous other individuals who performed and continue to perform the same or similar duties under the same or similar pay policies as Plaintiffs. These other individuals are the Class Members.

6.20. Defendants have violated Title 29 U.S.C. § 207 in that:

6.20.1. Plaintiffs and the Class Members worked in excess of forty (40) hours per week during one or more weeks of employment; and

6.20.2. No payments, or insufficient payments and/or provisions for payment, have been made by Defendants to properly compensate Plaintiffs and the Class Members at the statutory rate of one and one-half times the regular rate for those hours worked in excess of forty (40) hours per work week as provided by the FLSA.

**7. Collective Action Allegations.**

7.1. Plaintiffs and the Class Members are/were all non-exempt employees of Defendants and performed the same or similar job duties as one another in that they all performed electrical duties.

7.2. All of these individuals are/were and are paid in the same manner, i.e., hourly as an independent contractor and not as an employee. The individuals were not paid any overtime compensation.

7.3. All of these individuals are/were deprived of overtime pay even though they routinely worked in excess of forty (40) hours in a workweek.

7.4. Further, Plaintiffs and the Class Members are/were subjected to the same pay provisions in that they are/were all paid as an independent contractor but were not compensated at a rate one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek. In reality, the Electricians who were alleged to be independent contractors were/are actually employees of Defendants.

7.5. Thus, the Class Members are due overtime wages for the same reasons as Plaintiffs.

7.6. Defendants' failure to compensate Plaintiffs and the Class Members at rate one and one-half times their regular rate of pay for hours worked in excess of forty (40) hours in a workweek as required by the FLSA results from a policy or practice applicable to Plaintiffs and the Class Members.

7.7. Application of this policy or practice does/did not depend on the personal circumstances of Plaintiffs or those joining this lawsuit. Rather, the same policy or practice which resulted in the non-payment of overtime to Plaintiffs applied and continues to apply to all Class Members.

7.8. Accordingly, the Class Members of similarly situated plaintiffs is properly defined as:

> **7.8.1. All Electricians and Helpers (regardless of specific title) who worked for Defendants, or any of them, within the last three years, who were paid as independent contractors and not compensated at the statutory rate of one and one-half times their regular rate of pay for all hours worked more than forty (40) in a workweek.**

7.9. Defendants knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay overtime compensation with respect to Plaintiffs and the Class Members. In fact, Defendants employ many electricians as direct employees and electrical work is an integral part of Defendants' business.

7.10. Defendants' willful violation is also evidenced in part by that fact that Electricians are traditionally paid on an hourly basis and are non-exempt employees. Defendants are aware of this traditional pay method. On information and belief Defendants choose to ignore that Electricians are non-exempt employees because it was cheaper to treat them as independent contractors than as the employees they actually were. Additionally, there is no reasonable basis for Defendants to believe that Plaintiffs and the Class Members were exempt under the FLSA or that Defendants' practices were permitted by the FLSA.

7.11. Defendants did not act in good faith and/or have reasonable grounds for a belief that their actions did not violate the FLSA nor did they act in reliance upon any of the following in formulating their pay practices: (a) case law; (b) the FLSA, 29 U.S.C. § 201, et seq.; (c) Department of Labor Wage & Hour Opinion Letters; or (d) the Code of Federal Regulations.

8. **First Cause of Action: Failure to Pay Wages in Accordance with the Fair Labor Standards Act.**

8.1. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

8.2. Plaintiffs and the Class Members were, and are, entitled to be paid at the statutory rate of one and one-half times their regular rate of pay for those hours worked in excess of forty (40) hours in a workweek.

8.3. During the relevant period, Defendants violated § 207 of the FLSA by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, as aforesaid, for one or more workweeks without compensating such employees for their work at a rate of at least one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek.

8.4. To date, Defendants continue to fail to pay the Class Members their FLSA mandated overtime pay.

8.5. Defendants' actions in this regard were/are willful and/or showed/show reckless disregard for the provisions of the FLSA as evidenced by their continued failure to compensate Plaintiffs and the Class Members at the statutory rate of one and one-half times their regular rate of pay for the hours worked in excess of forty (40) hours in a workweek when they knew, or should have known, such was, and is due.

8.6. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and the Class Members suffered and continue to suffer damages and lost compensation for time worked over forty (40) hours in a workweek, plus liquidated damages.

8.7. Plaintiffs are entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

9. **Second Cause of Action: Failure to Pay Wages in Accordance with the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-19, *et seq*.**

9.1. The Plaintiffs incorporate by reference all of the above paragraphs in sections 1-7.

9.2. During their employment, the Plaintiffs were "employees" of Defendants as defined by the NMMWA in N.M. Stat. Ann. § 50-4-21(c).

9.3. During their employment, Defendants were the Plaintiffs' "employer" as defined by the NMMWA in N.M. Stat. Ann. § 50-4-21(b).

9.4. The Plaintiffs worked over 40 hours in workweeks in New Mexico.

9.5. This count arises from Defendants' violations of the NMMWA by failing to pay overtime to the Plaintiffs when they worked over 40 hours in individual workweeks.

9.6. Defendants classified the Plaintiffs as exempt from the overtime provisions of the NMMWA.

9.7. The Plaintiffs were not exempt from the overtime provisions of the NMMWA.

9.8. The Plaintiffs were regularly directed to work by Defendants, and did work, over 40 hours in individual workweeks.

9.9. As a result of the foregoing conduct, as alleged, Defendants have violated, and continue to violate the NMMWA by failing to pay the Plaintiffs overtime at one and one-half times their regular rate of pay when they worked over 40 hours in individual workweeks.

9.10. Defendants' actions were part of a "continuing course of conduct" (N.M. Stat. Ann. § 50-4-32) for which the Plaintiffs seek recovery for themselves.

9.11. As a result, the Plaintiffs have been damaged in an amount to be determined at trial.

## 10. Jury Demand.

10.1. Plaintiffs demand a trial by jury herein.

## 11. Relief Sought.

11.1. Wherefore, Plaintiffs, individually and on behalf of the Class Members, respectfully requests that they recover from Defendants, jointly and severally, and this

Court grant the following relief for the applicable time periods and continuing to the date of trial:

11.1.1. Designation of this action as a collective action on behalf of the Plaintiffs and Class Members and promptly issue a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals, appraising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual consents to participate in the suit pursuant to 29 U.S.C. §216(b);

11.1.2. An order requiring Defendants to turn over to Plaintiffs, at Defendants' expense, a detailed investigative accounting for the number of overtime-eligible hours actually worked by the Plaintiffs and all the Class Members;

11.1.3. A finding that Defendants' actions are willful under the FLSA;

11.1.4. An award of unpaid wages for overtime compensation due under the FLSA and continuing until the time of trial;

11.1.5. An award of liquidated damages as a result of the Defendants' failure to pay overtime compensation pursuant to the FLSA and continuing until the time of trial;

11.1.6. Unpaid wages under the NMMWA beginning from when the Defendants' continuing course of conduct started.;

11.1.7. An amount equal to twice their unpaid wages as penalties under the NMMWA;

11.1.8. An award of prejudgment and post judgment interest;

11.1.9. An award of costs and expenses of this action together with reasonable attorneys' and expert fees;

11.1.10.    Incentive awards for the lead Plaintiff(s);

11.1.11.    Leave to add additional plaintiffs by motion, the filing of written consents, or any other method approved by the Court;

11.1.12.    Equitably tolling of the statute of limitations for the Class Members effective the date of the filing of this Complaint; and

11.1.13. Such other and further relief as this Court deems just and proper.

        Respectfully submitted,

        /s/ Victor R. Wandres
        Victor R. Wandres, OBA #19591

**PARAMOUNT LAW**
CONSUMER PROTECTION FIRM

        4835 S. Peoria Ave., Suite 1
        Tulsa, OK 74105
        (918) 200-9272 voice
        (918) 895-9774 fax
        7104@paramount-law.net


By:    */s/ Chris R. Miltenberger*
      Chris R. Miltenberger
      Texas State Bar Number 14171200
      Designated as Lead Attorney

**The Law Office of Chris R. Miltenberger, PLLC**

1360 N. White Chapel, Suite 200
Southlake, Texas 76092
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

Attorneys for Plaintiffs Mike Hartman, Lance Heger and Noah Guerrero